UNITED STATES DISTRICT COURT

DISTRICT OF ARIZONA

| | | |
|---|---|---|
| LOUIS J. HOFFMAN, P.C., | ) | |
| | ) | |
| Plaintiff, | ) | 2:12-cv-01678 JWS |
| | ) | |
| vs. | ) | ORDER AND OPINION |
| | ) | |
| NEERAJ JHANJI, | ) | [Re: Motion at Docket 28] |
| | ) | |
| Defendant. | ) | |
| | ) | |

## I.  MOTION PRESENTED

At docket 28, plaintiff Louis Hoffman, P.C. ("Hoffman"), a law firm, moves for an order enforcing a settlement between the parties.  Alternatively, Hoffman moves for an order compelling defendant Neeraj Jhanji ("Jhanji") to participate in arbitration. Jhanji filed a response at docket 30.  Hoffman's reply is at docket 33.  Oral argument was not requested and would not assist the court.

## II.  BACKGROUND

Hoffman represented Jhanji in connection with the procurement of United States patents, patent sales, and commercialization strategies related to the patents.  Jhanji effectively terminated the relationship, and the parties have subsequently disputed what Jhanji owes Hoffman pursuant to their Partial Contingency Agreement ("Agreement").  Hoffman alleges Jhanji owes it compensation for certain work completed based on the

Agreement, but Jhanji denies any obligation to pay. Hoffman filed suit in state court, and Jhanji removed the case to federal court. On October 9, 2012, the parties filed a notice of settlement at docket 14 and indicated that they would submit a stipulation of dismissal. In early December the parties informed the court that they were working towards finalizing settlement terms. No stipulation of dismissal has been filed; instead, on February 1, 2013, Hoffman filed a motion seeking to enforce the settlement it asserts was agreed upon in October of 2012, or, alternatively, seeking to compel arbitration.

### III. DISCUSSION

**A. Settlement agreement**

On July 27, 2012 Hoffman, through counsel, sent Jhanji an offer for settlement. The offer was that Jhanji agree to pay Hoffman a total of $305,000 by August 15, 2012, or agree to pay Hoffman a total of $95,000 by August 15, 2012, as well as an additional $1 million from the proceeds of any sale, litigation, or other commercialization of the patent portfolio at issue. The offer specifically indicated that it would be available to Jhanji through August 1, 2012, or until Jhanji filed a responsive pleading or motion, whichever came first. On October 9, 2012, Jhanji's counsel, who has since withdrawn, sent plaintiff's counsel an email. That email states as follows: "Mr. Jhanji accepts Mr. Hoffman's offer and will pay $305,000 in exchange for full and general releases. We will prepare a settlement agreement to this effect and get it to you within the next week."

While it appears that the parties reached a juncture where they could have easily concluded basic settlement terms of $305,000 in exchange for full and general liability releases, they missed the mark. Jhanji's counsel's email in October was not a valid

acceptance of Hoffman's July offer. That July offer explicitly expired on August 1, 2012, at the latest and thus was no longer on the table. Hoffman does not demonstrate that he continued to offer the settlement of $305,000 after August 1, 2012. Consequently, the email Jhanji sent Hoffman was an offer to Hoffman, and the record does not demonstrate that Hoffman accepted. It may be that Hoffman intended to agree to at least those basic terms back in October, but again there is no evidence of Hoffman's subsequent acceptance in writing, which is required under Rule 80(d) of Arizona's Rules of Civil Procedures.[1]

Rather than solidify in writing the basic terms they could agree upon, the parties proceeded to exchange draft settlement agreements. Jhanji's counsel sent Hoffman a proposed full-form settlement agreement on October 18, 2012. Hoffman did not sign the agreement, but instead sent a revised agreement back to Jhanji. The court has not been provided with copies of these initial drafts, but the record is clear that the parties disputed the timing of payment and the amount owed if Jhanji paid after a certain date,[2] as well as how to word the liability releases or whether a general release was extensive enough. The parties continued to exchange several full-form draft settlement agreements over the course of three months with no success.

Hoffman argues that, through counsel, the parties resolved their differences as evidenced by the exchanges of drafts. Hoffman did not provide all of the drafts to the

---

[1] *Canyon Contracting Co. v. Tohono O'Odham Hous. Auth.*, 837 P.2d 750, 752 (Ariz. Ct. App. 1992) (recognizing that Rule 80(d) applies to settlement agreements).

[2] Hoffman's fourth proposed full-form draft agreement, sent to Jhanji on December 20, 2012, is the only one provided to the court. The proposal indicated that Hoffman would accept $305,000, but only if Jhanji paid that amount on or before December 28. After that date Hoffman wanted Jhanji to pay $316,000.

court. Regardless, it very well may be that the attorneys were resolving the differences with each draft exchanged. In fact, the record shows that by December 20, 2012, whatever the dispute had been about the release language, Hoffman was clearly open to a broadly worded and all-encompassing liability release provision and a consent not to sue provision. However, despite these exchanges of draft agreements, nothing was signed, and the court has not been provided with emails or letters between counsel to demonstrate that they had reached mutually acceptable solutions to their disputed issues, including the amount owed if Jhanji did not pay before the deadline Hoffman set. Thus, there was no written agreement as required by Rule 80(d) of Arizona's Rules of Civil Procedures.

Hoffman points out that in order to expedite the settlement process, he sent Jhanji a short-form agreement on December 18, 2012, that went back to simplified terms set forth in the October email: Jhanji would pay $305,000 to Hoffman in exchange for Hoffman providing full and general releases of all liens, claims, and liabilities of any kind. Jhanji did not sign that form even though that was what he had offered back in October. Hoffman's attempt to revert back to the simplified settlement agreement later in negotiations is insufficient to create an agreed upon settlement.[3]

**B. Arbitration**

Hoffman requests in the alternative that the court enforce arbitration as set forth in the Agreement.[4] Paragraph 18 of the Agreement sets forth provisions for

---

[3] *See* 17A Am.Jur.2d Contracts § 85.

[4] Hoffman states that the Agreement is attached as Exhibit G to the motion, but only Exhibits A-E are attached. A copy of the Agreement is included in the record as Exhibit 4 to

compensation in the event of termination.  Paragraph 19 of the Agreement addresses what happens in the event the parties have a dispute about the Agreement, including a dispute about compensation after termination:

> The parties shall attempt to resolve informally any disputes that arise from or relate to this Agreement, including the compensation level under the proceeding paragraph [dealing with compensation after termination of the relationship].  Disputes about Prosecution Hourly Charges or Prosecution Costs on [Hoffman] Statements must be raised within sixty(60) days or they shall not be remediable. [Hoffman] shall inform Jhanji on receipt of Recovery and the payment proposed to be made from such Recovery, and [Hoffman] shall not make payments ... from Recovery until and unless Jhanji agrees, in writing, with the proposed payment.  If Jhanji disputes any payment proposed to be made from Recovery, [Hoffman] shall release any undisputed portion and retain the disputed amount in [Hoffman's] attorney trust account.  **If any dispute cannot be resolved informally, the parties agree to resolve that dispute through the State Bar of Arizona Fee Arbitration Program in Phoenix, Arizona.**  Any claim arising out of or relating to this Agreement shall be brought only in a court located in Arizona and shall be governed by the laws of the State of Arizona, without regard to the state's conflict of law provisions.[5]

Hoffman asserts that the plain language of Paragraph 19 requires arbitration of this fee dispute.  Jhanji asserts that the arbitration clause only applies to disputes about "any payment proposed to be made from Recovery," which is not the type of dispute at issue in this case.

Arizona public policy strongly favors arbitration.[6]  In furtherance of this policy favoring arbitration, the Arizona legislature enacted A.R.S. §12-1501 which states:

---

Jhanji's response (Doc. 30-1 at p. 11).

[5] Doc. 30-1 at p.15 (emphasis added).

[6] *City of Cottonwood v. James L. Fann Contracting, Inc.*, 877 P.2d 284, 288 (Ariz. Ct. App. 1994)

> A written agreement to submit any existing controversy to arbitration or a provision in a written contract to submit to arbitration any controversy thereafter arising between the parties is valid, enforceable and irrevocable, save upon such grounds as exist at law or in equity for the revocation of any contract.[7]

A court must order the parties to arbitrate on the application of a party showing a written agreement to arbitrate and the opposing party's refusal to arbitrate.[8] The enforceability of an arbitration agreement is determined under principles of general contract law.[9] When a contract contains clear and unambiguous terms, the court must give effect to the contract as written.[10]

The court concludes that the arbitration clause unambiguously requires arbitration of this fee dispute: "If *any dispute* cannot be resolved informally, the parties agree to resolve that dispute through the State Bar of Arizona Fee Arbitration Program in Phoenix, Arizona." The phrase "any dispute" is clear, and not only encompasses disputes about a payment from Recovery, but also any dispute about hourly charges or fees after termination pursuant to Paragraph 18.

Jhanji argues that if the arbitration clause is interpreted broadly to encompass disputes beyond those involving payments under Recovery, paragraph 19's choice of law and venue provision are rendered meaningless. The arbitration clause requires any dispute under the Agreement, which is a fee agreement, to go through the state's fee arbitration program. That clause is followed by a venue provision and choice of law

---

[7] Ariz. Rev. Stat. § 12-1501.

[8] Ariz. Rev. Stat. § 12-1502(A).

[9] *Broemmer v. Abortion Services of Phoenix, Ltd.*, 840 P.2d 1013, 1015 (Ariz. 1992).

[10] *Mech. Air Eng'g Co. v. Totem Constr. Co.*, 801 P.2d 426, 427-28 (Ariz. Ct. App. 1989)

provision.  But these provisions are not conflicting and can be interpreted harmoniously.  As Hoffman states in the reply brief, "in the event one party refuses to arbitrate, the other party may sue to compel compliance with the arbitration clause.  That is, of course, what happened here.  It was simply a matter of prudence to specify where a suit must be filed and what law would apply."[11]

### IV.  CONCLUSION

Based on the preceding discussion, Hoffman's motion to enforce the settlement agreement or alternatively compel arbitration is **HEREBY GRANTED IN PART AND DENIED IN PART**.  The request to enforce the settlement agreement is denied, but the request to enforce the Agreement's arbitration provision is granted.  The parties are directed to participate in binding arbitration before the State Bar of Arizona Fee Arbitration Program in Phoenix, Arizona.  Plaintiff shall file a report on the first business day of each month beginning on September 3, 2013, advising the status of the arbitration.

DATED this 24th day of June 2013.

                    /s/  JOHN W. SEDWICK
                    UNITED STATES DISTRICT JUDGE

---

[11]Doc. 33 at p. 11.